UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| SAMUEL SWIFTBIRD,<br><br>    Plaintiff,<br><br> vs.<br><br>PENNINGTON COUNTY JAIL<br>COMMANDER ROB YANTIS, sued in<br>his official and individual capacities;<br>PENNINGTON COUNTY JAIL CAPTAIN<br>BROOK HAGA, sued in her official and<br>individual capacities; and JOHN DOES<br>1 through 10, sued in their official and<br>individual capacities,<br><br>    Defendants. | CIV. 19-5008-JLV<br><br><br>ORDER |

## INTRODUCTION

Plaintiff Samuel Swiftbird alleges defendants, employees of the Pennington County Jail ("the Jail") in Rapid City, South Dakota, violated his rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA") by denying him religiously appropriate meals during his incarceration. (Docket 6). He seeks injunctive and monetary relief. Id. at p. 4. Defendants move to dismiss plaintiff's complaint, arguing he failed to exhaust his administrative remedies within the Jail. (Docket 16). For the reasons given below, the court grants the motion to dismiss.

## I. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl.

Corp. v. Twombly, 550 U.S. 544, 570 (2007). Two "working principles" underlie Rule 12(b)(6) analysis. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). First, courts are not required to accept as true legal conclusions "couched as . . . factual allegation[s]" in the complaint. Id. "[A] complaint must allege 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.' " Torti v. Hoag, 868 F.3d 666, 671 (8th Cir. 2017) (quoting Twombly, 550 U.S. at 555). The court does, however, "take the plaintiff's factual allegations as true." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009). Second, the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679. The complaint is analyzed "as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." Braden, 588 F.3d at 594.

"Though matters outside the pleadings may not be considered in deciding a Rule 12 motion to dismiss, documents necessarily embraced by the complaint are not matters outside the pleading." Zean v. Fairview Health Servs., 858 F.3d 520, 526 (8th Cir. 2017) (internal quotation omitted). "In general, materials embraced by the complaint include documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleadings." Id. (internal quotation omitted).

## II.    Facts

Defendants filed the Jail's inmate handbook, copies of administrative grievances lodged by plaintiff, and a set of screenshots illustrating the functions

2

of the Jail's inmate kiosk system used to submit grievances. (Docket 19). They assert these materials are necessarily embraced by the complaint because plaintiff alleged he exhausted his administrative remedies through denied grievances in his complaint. (Docket 17 at pp. 6-7). Plaintiff cites defendants' exhibits extensively in his response to the motion to dismiss. (Docket 24 at pp. 2-4). The court finds the exhibits contain factual material alleged in the complaint and concludes plaintiff is not questioning the exhibits' authenticity. Zean, 858 F.3d at 526. The factual recitation below is drawn from the complaint and defendants' exhibits.

As of February 27, 2019, plaintiff was incarcerated at the Jail.[1] The Jail has a grievance policy to allow inmates to lodge complaints with officials. (Docket 19-1 at pp. 17-19). Inmates must submit their grievances on a computer kiosk. (Dockets 19-1 at p. 18 & 19-3). Jail officials respond to the grievance through the kiosk. (Docket 19-3 at p. 16) (example of grievance response). The response screen contains two options: inmates may "finish" or "appeal" the grievance response. Id. The grievance policy allows inmates to appeal the response first to the Jail Captain and then to the Jail Commander. (Docket 19-1 at pp. 18-19). There is no appeal from the Commander's decision. Id. at p. 19.

---

[1]On March 11, 2019, the Jail informed the court plaintiff had been transferred to the South Dakota State Penitentiary. (Docket 12). The South Dakota Department of Corrections online inmate locator tool states plaintiff was released on parole and subsequently absconded. Offender Locator, South Dakota Department of Corrections, available at https://doc.sd.gov/adult/lookup/ (last accessed Jan. 16, 2020).

3

Plaintiff is a Muslim. (Docket 6 at ¶ 1). On January 17, 2019, plaintiff filed a grievance asking for a kosher diet.[2] (Docket 19-2 at p. 3). In response, a Jail official stated Captain Brooke Haga reviewed and denied the request. Id. Plaintiff "closed" the grievance on January 22. Id. Plaintiff concedes he did not appeal the denial. (Docket 24 at p. 3).

On January 22, shortly after closing his first grievance, plaintiff filed a second grievance again asking for a kosher diet. (Docket 19-2 at p. 5). On January 29, a Jail official denied the grievance. The official wrote: "This is a duplicate request. Your previous or subsequent request has been answered. Submitting multiple requests for the same information will/can delay the process and will not expedite a response. Multiple requests that have already been answered will not continue to be reviewed. Thank you for your patience." Id. Plaintiff closed the grievance on January 30 and did not appeal. Id. Plaintiff's original complaint was dated January 25. (Docket 1 at p. 7).

## III. Analysis

### A. PLRA administrative exhaustion

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust "such administrative remedies as are available" through their place of incarceration before bringing a suit under federal law. 42 U.S.C. § 1997e(a).

> [T]o properly exhaust administrative remedies[,] prisoners must "complete the administrative review process in accordance with the

---

[2]The parties consistently refer to plaintiff's preferred diet as "kosher." (Dockets 6 at ¶ 9 & 17 at p. 2). Foods permissible for consumption under Islamic law are commonly referred to as halal, while the term kosher describes acceptable foods under Jewish law. No party explains this discrepancy, but it does not impact the present motion to dismiss.

applicable procedural rules," rules that are defined not by the PLRA but by the prison grievance process itself. . . . [I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

Jones v. Bock, 549 U.S. 199, 218 (2007) (quoting Woodford v. Ngo, 548 U.S. 81, 88 (2006)). "Inmates are excused from exhausting remedies 'when officials have prevented prisoners from utilizing the procedures, or when officials themselves have failed to comply with the grievance procedures.'" Porter v. Sturm, 781 F.3d 448, 452 (8th Cir. 2015) (quoting Gibson v. Weber, 431 F.3d 339, 341 (8th Cir. 2005)).

It is undisputed that plaintiff did not appeal the denial of his two grievances concerning his diet request. Plaintiff instead argues the Jail's denial of his second grievance "prevented [him] from using the grievance procedures and failed to follow [the procedures.]" (Docket 24 at p. 4). He asserts the denial constituted a failure to process the grievance, threatened him, and was inconsistent with grievance policy. Id. at pp. 4-6. These arguments do not excuse plaintiff's failure to exhaust the Jail administrative procedure.

Plaintiff first asserts the Jail was required to process all grievances, regardless of whether the grievance duplicated an earlier request. Id. at pp. 4-5. He further argues the second grievance included a sufficient amount of new information to distinguish it from the first. Defendants argue the grievance procedure requires only that Jail officials respond to the grievance and that the second grievance did receive a response. (Docket 25 at pp. 2-3).

The grievance procedure states that a Jail official "will respond within 72 hours, excluding holidays and weekends." (Docket 19-1 at p. 18). A Jail

official responded to plaintiff's second grievance, fulfilling the requirement.[3] (Docket 19-2 at p. 5). The procedure does not require Jail officials to respond to each grievance on the merits. In fact, it contains many threshold procedural requirements which could lead to denial of a grievance not on the merits. See Docket 19-1 at p. 18 (requiring grievances, *inter alia,* to be filed within five days of the offending incident, to state the specific nature of the complaint, and to explain efforts made to informally resolve the complaint). Plaintiff's objection that the Jail did not "process" the second grievance asks the court to invent a requirement that Jail officials respond to each grievance on the merits. But the Jail, not the court, defines the grievance procedure. Jones, 549 U.S. at 218. The court is bound by the existing grievance procedure.

The court likewise finds no merit in plaintiff's contention his second grievance was materially different from his first. Both grievances asked for the same relief—kosher meals. (Docket 19-2 at pp. 3, 5). It is true, as plaintiff notes, that the second grievance contained more information about his religious beliefs. Id. at p. 5. The second grievance also asserted that Captain Haga "ha[d] some sort of personal issue with" plaintiff. Id. But the second grievance pertained to the same subject as the first. The court cannot say Jail officials were wrong to characterize the second grievance as duplicative of the first.

---

[3]The court does note that the response was untimely by approximately two days. (Docket 19-2 at p. 5). However, this minor delay is not a failure to abide by the grievance procedure requiring the court to excuse compliance with the exhaustion requirement. See Foulk v. Charrier, 262 F.3d 687, 698 (8th Cir. 2001) (excusing failure to exhaust where prison officials failed to respond to grievance, depriving inmate of further administrative remedies). Here, plaintiff could have appealed the denial.

Plaintiff's argument does not show Jail officials failed to abide by the grievance procedure.

Plaintiff next argues the Jail's response to his second grievance "is a threat" that "would deter any reasonable inmate from using" the procedures. (Docket 24 at p. 5). Defendants deny the response was a threat, but instead describe it as a truthful advisement of the delays created by multiple grievances on the same matter. (Docket 25 at p. 3). The response simply cannot be described as a threat. The response uses bureaucratic language to deny the grievance on the basis that it is duplicative. The court discerns no coercion in the response's text at all, and certainly no coercion sufficient to enable a finding that Jail officials prevented plaintiff from appealing the adverse decision. Porter, 781 F.3d at 452.

Finally, plaintiff contends denying grievances because they are duplicative does not comply with the grievance procedure. (Docket 24 at pp. 5-6). Plaintiff correctly notes the procedure does not explicitly state that Jail officials may deny grievances as duplicative. But the procedure does require inmates to "state the specific nature of the complaint" and to "explain what efforts (if any) they have taken to resolve their problem by other means." (Docket 19-1 at p. 18). These requirements appear to be aimed at promoting efficiency in resolving grievances by winnowing out generalized issues and matters that could be informally resolved. The same efficiency motivation is reflected in the Jail's response to the second grievance. (Docket 19-2 at p. 5). The court cannot say the Jail failed to

7

abide by its own procedures in denying the second grievance on efficiency grounds when the procedure reflects that same concern.

In addition, plaintiff again invites the court to read provisions into the grievance procedure. He complains Jail officials "in effect" created "a new rule not found anywhere in the jail's procedures" with their response. (Docket 24 at p. 6). But the Jail is entitled to create its own grievance procedures. A policy of denying duplicative grievances is readily implied by the procedure. The court cannot strictly construe the procedure against Jail officials or read into the procedure a requirement that grievances only be denied on bases enumerated in the procedure. Jones, 549 U.S. at 218. The court will not excuse plaintiff's failure to exhaust the Jail administrative remedies on this basis.[4]

Plaintiff has not shown either that Jail officials prevented him from exhausting his administrative remedies or that they failed to follow the grievance procedure. Accordingly, the court cannot excuse his failure to exhaust administrative remedies and the PLRA "requires immediate dismissal of all claims[.]" Gibson, 431 F.3d at 341.

## B.  Injunctive and declaratory relief

The PLRA forbids inmates from bringing any action until "such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Plaintiff did not exhaust his administrative remedies as to his RLUIPA claim. He is barred from bringing that claim, which means he cannot seek any relief on the

---

[4]Of course, as defendants point out, plaintiff had the opportunity to challenge the second grievance denial by appealing. In the appeal process, he could have challenged the finding that his second grievance was duplicative.

claim, whether that relief be monetary, injunctive or declaratory. Accordingly, the court will not order injunctive or declaratory relief.

In the alternative, the court notes that plaintiff is no longer incarcerated at the Jail. His claims for injunctive and declaratory relief are therefore moot because he is no longer subject to the complained-of conditions. See Smith v. Hundley, 190 F.3d 852, 855 (8th Cir. 1999) (denying jail conditions claims as moot when inmate no longer in facility); Martin v. Sargent, 780 F.2d 1334, 1141 (8th Cir. 1985) (same). Plaintiff asserts it is "unlikely" he will not be incarcerated again at the Jail, rendering his claims not moot. (Docket 24 at pp. 7-9). The court cannot conclude plaintiff is likely to reoffend to save his claims from mootness. The court must instead "assume that [plaintiff] will conduct [his] activities within the law and so avoid prosecution and conviction."[5] O'Shea v. Littleton, 414 U.S. 488, 497 (1974) (finding plaintiffs alleging possibility of future prosecution lacked standing). Plaintiff's injunctive and declaratory relief claims are moot.

---

[5]To the extent it may be argued that plaintiff's apparent status as a parole absconder, see supra note 1, means he will inevitably be incarcerated in the Jail again, the court notes there is no evidence plaintiff would again be denied a kosher diet. See Brazil v. Ark. Dep't. of Human Servs., 892 F.3d 957, 960 (8th Cir. 2018) (prison claims moot even if "it is theoretically possible that the plaintiff could return to the original facility and once again face the same conditions."). Defendants also state plaintiff received kosher meals before he was transferred out of the Jail. (Docket 17 at p. 8).

**ORDER**

For the reasons given above, it is

ORDERED that defendants' motion to dismiss (Docket 16) is granted.

IT IS FURTHER ORDERED that plaintiff's amended complaint (Docket 6) is dismissed without prejudice for failure to state a claim upon which relief may be granted.

Dated January 16, 2020.

BY THE COURT:

JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE